CHARLES N. OGDEN ET AL., APPELLANTS, V. ARTHUR GAR-
RISON, APPELLEE.

FILED SEPTEMBER 16, 1908. No. 15,252.

1. **Appeal in Equity.** To secure a review of an equity case in this
court, the filing of a motion for a new trial in the court below
is not required.

2. **Vendor and Purchaser:** NOTICE. A purchaser is chargeable with
notice of a tenant's rights, when the latter is in the actual pos-
session of the real estate at the time it is sold.

3. **Landlord and Tenant:** REMOVAL OF FIXTURES. The execution of a
new lease, in which the tenant does not expressly reserve fix-
tures or improvements erected by him under a preceding lease,
does not deprive him of the right to remove them.

APPEAL from the district court for Harlan county: ED
L. ADAMS, JUDGE. *Affirmed.*

*John Everson,* for appellants.

*J. G. Thompson* and *Keester & Myers, contra.*

EPPERSON, C.

The defendant objects to the jurisdiction of this court
for the reason that the plaintiff filed no motion for a new
trial in the court below. This was a proceeding in equity,
and to obtain a review of the case in this court it was un-
necessary that a motion for a new trial be filed in the
court below. Under the provisions of the code relative to
the review of equity cases prior to the amendment of
1905, it was unnecessary to file a motion for a new trial in
order to review the case submitted to the lower court.
The amendment of 1905 did not change this rule.

In 1898 the defendant obtained possession of certain
farm land in Harlan county under a written lease for one
year. He remained in possession as a tenant from year
to year until March 1, 1906. His landlord a few months
previous had sold the land to Danskin & Googins, who on

March 21, 1906, by their written contract, demised the land to the defendant from the 1st of March, 1906, to the 1st of March, 1907. About the first of July, 1906, Danskin & Googins sold the land to the plaintiffs herein. Prior to the purchase of the land by Danskin & Googins, the defendant, with the consent of his landlord, placed upon said land for his own convenience and benefit two granaries, 8 feet by 16 feet; a chicken house, 8 feet by 12 feet; a blacksmith shop, 12 feet by 14 feet; and about 40 rods of fence. A roof was placed over the granaries in such a way as to form a machine shop. The fixtures were so constructed that they could be removed without injury to the demised premises. The buildings had no foundations. Such improvements were termed "fixtures" in *Lanphere v. Lowe*, 3 Neb. 131. Defendant contended that he had a right to remove them, and this action was brought before the expiration of the lease last above described to restrain him from so doing. Upon trial the district court dismissed the action, and plaintiff appeals.

When each sale was made, defendant was in the actual possession of the land as a tenant. It is the rule that a purchaser is chargeable with notice of a tenant's rights when the latter is in the actual possession of real estate at the time it is sold. *Friedlander v. Ryder*, 30 Neb. 783. This rule is not assailed here. It is plaintiffs' theory that the defendant is estopped from asserting title by reason of a stipulation contained in the renewal lease made with Danskin & Googins after the fixtures were placed upon the land. The stipulation is as follows: "The party of the second part (defendant) will carefully protect all buildings, fences and improvements of every kind that are now on said premises, or that may be erected thereon during the continuance of this lease; that he will promptly at the expiration of the term herein granted yield up possession of said premises in as good repair as they now are or may be at any time during the continuance of this lease, ordinary wear and loss by fire excepted." Plaintiffs contend for the rule announced in Taylor, Landlord

and Tenant (9th ed.), sec. 552, as follows: "If a tenant, at the close of his term, renews his lease, or surrenders it for the purpose of acquiring a fresh interest in the premises, he should take care to reserve his right to remove such fixtures, as he had a right to sever under the old tenancy; for, where his continuance in possession is under a new lease or agreement (it is held that) his right to remove fixtures is determined, and that he is in the same situation as if the landlord, being seized of the land together with the fixtures, had demised both to him." This rule has been followed in many cases, some of which will be referred to hereafter. It has never been adopted by this court, although in *Bowman v. Wright*, 65 Neb. 661, cited by plaintiffs, it was held: "Making and accepting a new lease during the term of an existing one operates as a surrender and abandonment of the prior lease." This is hardly in point, and cannot possibly be construed as adopting the rule quoted from Taylor.

There is a conflict of authorities as to the effect of a renewal lease in which no reservation is made by the tenant of fixtures reserved to him by a former lease. The weight of authority appears to be against the conclusion we have reached, but a number of excellent courts have held that such a renewal lease will not estop him from claiming title to improvements previously made. In *Kerr v. Kingsbury*, 39 Mich. 150, 33 Am. Rep. 362, Judge Cooley, in delivering the opinion of the court, said in reference to the tenant's right to remove trade fixtures during the term, or while he still has a right to regard himself as the occupant of the premises: "But why the right should be lost when the tenant, instead of surrendering possession, takes a renewal of his lease, is not very apparent. There is certainly no reason of public policy to sustain such a doctrine. On the contrary, the reasons which saved to the tenant his right to the fixtures in the first place are equally influential to save to him on a renewal what was unquestionably his before. What could possibly be more absurd than a rule of law which should

in effect say to the tenant who is about to obtain a renewal: 'If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord.' "

In *Bergh v. Herring-Hall-Marvin Safe Co.,* 70 L. R. A. 756 (136 Fed. 368), it was held: "Entering under a renewal lease, which does not reserve the right to remove trade fixtures consisting of chattels which may be removed without injury to the building, does not destroy that right." Coxe, circuit judge, in delivering the opinion of the court, spoke as follows regarding the numerous cases holding to the contrary: "The rule is of ancient origin and has grown up step by step, the common law accepting some of the harsh analogies of the civil law, until, as trade and commerce expanded, it was found that a harsh application of it to the new relations was producing inequitable results never contemplated at the time the rule had its origin. The trend of recent authority is toward a restricted application of the rule to trade fixtures, so as to prevent manifest injustice. Regarding the rationale of the rule, it is difficult to discover any principle of logic or equity which can be invoked in its support. * * * At the end of the term the lease is renewed in the identical language of the first lease. If the defendants' contention be correct the moment the tenant goes into possession under the new lease the title to this exceedingly valuable property passes to his landlord. Such a rule must yield to modern conditions and modern progress. Our views in this regard cannot be better expressed than by quoting from *Devin v. Dougherty,* 27 How. Pr. (N. Y.) 455, where the tenant for business purposes had built an awning over the sidewalk in front of his shop during the time of the original lease, which was renewed without reservation as to the awning. The court said: 'As the new lease was intended merely to provide for a

23

further occupancy of the premises, and that for the same purposes, I see not why it was necessary for the tenant to reserve in it any rights in regard to a thing which was his, and which it must have been understood he was to continue to use as his own during his new term. He hired, for a second time, his landlord's premises; but how can that be said to be also a hiring of property, upon these premises, which belonged to himself and which, as yet, he had a right to use upon those premises under a lease still in force? What need was there of any agreement as to what he then had a right to remove, and an equal right to continue to use upon the premises as long as he secured the right to the occupancy of such premises?' " 136 Fed. 368.

*Daly v. Simonson,* 126 Ia. 716, is very similar to the case at bar. The tenant had been in possession under a lease which provided for the removal of the improvements made by him. The landlord sold the premises, and the purchaser at the expiration of the lease renewed the same, omitting provisions for the removal of the fixtures in question, but did agree to protect the buildings, fences and improvements. In the opinion it is said: "True, this last lease did not contain any reservations or exceptions; but it did not cover anything aside from the land and its proper fixtures. It surely did not deprive defendant of his property. Of course, a tenant must ordinarily remove fixtures and improvements, at least within a reasonable time after the expiration of his lease. * * * There are some cases which seem to hold that, if a tenant takes a renewal lease which contains no reservations, he by that act surrenders his right to removal of the fixtures placed by him upon the land during the term created by the prior lease. But we have not followed that rule. * * * When the improvements were erected in this case, they, by express agreement between landlord and tenant, were personal property; and by taking the lease from plaintiff defendant did not surender his claim thereto. * * * So that, even if the lease from plaintiff and Butler to

defendant be not reformed, we do not think defendant lost his title to the personal property." In *McCarthy v. Trumacher,* 78 N. W. 1104 (108 Ia. 284), the lease construed contained a provision almost identical with that in controversy here. It is there held that it "does not deprive him of a right granted under a prior lease to remove improvements erected by him; the occupancy being continuous under both leases." See, also, *Union Terminal Co. v. Wilmar & S. F. R. Co.,* 116 Ia. 392.

In *Hedderich v. Smith,* 103 Ind. 203, the conclusion is contrary to that reached by us as to the waiver by the tenant of his rights to remove the improvements by entering into a new lease of the premises. At the expiration of the old lease, under which the improvements were made, a new lease was entered into providing for the payment of stipulated rent. The rent reserved for the new term was different from the old. In the opinion it is said: "Without question, if there had been nothing more than an extension of the old lease upon the same terms, the respective rights of the parties would have remained the same. The acceptance of a new lease upon different terms was, however, the creation of a new tenancy." Wood, Landlord and Tenant (2d ed.), sec. 529, also seems to recognize as one of the conditions for operating an estoppel by the making of a new lease that it should contain different provisions, and that a mere renewal of the former lease is insufficient to operate an estoppel. He says: "But, while a tenant may remove a trade fixture at any time during his original term, or any renewal thereof, yet, although he continues in possession after the expiration of his original term, *if he holds under a new lease, in which no provision for the removal of the fixtures is made,* he is treated as having abandoned his right thereto." See, also, *Radey v. McCurdy,* 209 Pa. St. 306, 67 L. R. A. 359. In *Sanitary District of Chicago v. Cook,* 169 Ill. 184, 39 L. R. A. 369, it was held that trade fixtures erected by a tenant during the term of the original lease cannot be removed after the expiration of a new lease

which contains no reservation of any right or claim of the tenant to the fixtures, and does not recognize his right to remove them. This, also, was the holding in *Carlin v. Ritter,* 68 Md. 478, 6 Am. St. Rep. 467, wherein a review of many decisions is given, and wherein Judge Cooley's opinion in *Kerr v. Kingsbury, supra,* is criticised. The reasons for the rule imposing an estoppel upon the execution of a new lease, stated briefly, seem to be upon the theory that the fixtures on the premises at the time of the renewal lease have become a part of the thing demised, and the tenant by accepting a lease of this kind, without reserving the fixtures, has acknowledged the right of his landlord to them. This, it occurs to us, means that by a failure to reserve his own property upon a renewal of the lease the tenant is conclusively presumed to have presented them to his landlord.

We find in many decisions holding that the creation of a new lease may operate as an estoppel that the rule is not carried to the extent of holding that a renewal, which, in fact, continues the former tenancy, will operate as an estoppel. And in the case at bar it appears that the renewal lease was but a continuation of his tenancy. It does not appear that it provided for the payment of less rent, nor that it lengthened the tenancy. Under the law he was, in the absence of such renewal lease, entitled to possession of the land until the end of the period fixed by it. He was a tenant from year to year. We presume, in the absence of evidence, that such tenancy had not been terminated when the renewal lease was made. It covered a period of one year only. It is quite apparent that it was executed for the purpose of terminating the defendant's existing tenancy, and that it did not create a new one. Defendant had not yielded possession. Nothing appears in the renewal lease indicating an intention to give the buildings in controversy to the landlord. The buildings referred to in the lease were the other buildings upon the land, which were in fact a part of the realty, and placed there before defendant's tenancy commenced or

thereafter by the landlord. It is not sound reasoning to hold, under the evidence of this case, that the defendant intended to make a present to the landlord. He erected the buildings. They were his property. He never received anything for them. It is difficult to see how the renewal lease, which may better be termed an extension lease, in which defendant agreed to protect the plaintiffs' buildings, can operate as a transfer of the defendant's chattels to plaintiffs' grantor. It would seem better reasoning to hold that the renewal lease was intended by the landlord as an extension of the time in which the defendant was privileged to avail himself of all the rights secured to him by the tenancy. Again, the buildings in controversy never became fixtures in the sense that they were affixed to the freehold. In *Carlin v. Ritter, supra,* the rule there announced, and above referred to, was applied to a bakehouse and oven, an awning attached to the house, a furnace, window shutters, counters, shelving, etc. But it was there also held that "wooden structures or buildings resting by their own weight on flat stones laid upon the surface of the ground, without any other foundation, are not fixtures." Although we have in this opinion for convenience referred to the buildings in controversy as "fixtures" and "improvements," yet in the law controlling landlords and tenants they are in fact not such, but are chattels.

The judgment of the district court was right, and we recommend that it be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.