## DUNKEL ET AL. v. HEDGES.

*Landlord and tenant—Fixtures—Right to remove under new
lease—Notice and knowledge by purchaser of fee—Corn crib,
tenant house and hay barn.*

1. A tenant who during his term purchases agricultural fixtures
for his own convenience, and at his own expense, and places
the same upon the property with the intention of removing
them during such term, does not by entering into a new
lease, wherein he agrees to take good care of all buildings
and improvements on the farm, or which may be placed
thereon during the term of the lease, lose his right to re-
move such fixtures during the term of the new lease.

2. A purchaser of real estate in the possession of a tenant is
chargeable not only with the knowledge of the latter's
rights, but also of all facts connected therewith which a
reasonable inquiry would have disclosed.

(Decided March 26, 1921.)

APPEAL: Court of Appeals for Pickaway county.

*Mr. Charles H. May,* for plaintiffs.
*Mr. Barton Walters,* for defendant.

SAYRE, J. The plaintiffs brought this action to
enjoin defendant from tearing down and removing
certain property located on a tract of land of more
than four hundred acres in Harrison township, Pick-
away county. The defendant was in possession of
the premises as a tenant from 1893 until 1919. The
premises "prior to August 1, 1918, and for a great
many years prior thereto, were owned by Richard
A. Harrison, Maria L. Harrison and the heirs of the
said Maria L. Harrison; that said heirs of Maria L.
Harrison, to-wit: Loui H. Watson, Richard A. Har-
rison, Jr., Warner Harrison, Harry H. Marsh and

Louise Marsh, on the 1st day of August, A. D. 1918, conveyed said premises by a good and sufficient deed of general warranty, for a good and valuable consid-- eration, to one Carey Short, and that on said August 1, 1918, the said Carey Short, by a good and sufficient deed of general warranty, for a good and valuable consideration, duly conveyed said premises to the plaintiffs, who have ever since been the owners thereof.''

The lease to defendant for the year March, 1917, to March, 1918, by Maria L. Harrison, dated October 21, 1916, and the lease by Loui H. Watson, and others, dated September 6, 1917, for the year March, 1918, to March, 1919, contained the recital that the lessor and lessors ''In consideration of the rents and covenants hereinafter contained, and by the said Hedges to be paid and performed, does hereby lease and farm-let unto the said Hedges all that certain parcel of land, with all the buildings thereon * * *.''

In each lease the lessee covenanted that he would ''Deliver up to said lessor * * * heirs, devisees or assigns, the said premises in as good order and condition as they now are or may be put * * * and take good care of all buildings and improvements while on said farm, or which may be placed thereon during this lease.''

The evidence is uncontradicted that the Dunkels when they purchased of Carey Short had knowledge of these provisions in the lease by the Harrisons to Hedges. The petition declares, and Daniel F. Dunkel testified, that when he and his wife Cora purchased the premises they relied on the aforesaid provisions in the lease of September 6, 1917.

The premises were used for raising wheat, corn and hay. The defendant erected or placed on the

premises the property in dispute at his own expense, and, as he testifies, with no intention of making it a part of the realty, and it can be removed without injury to the realty.

The property claimed by plaintiff consists of a tenant house, resting on white oak blocks, a corn crib, 68x50x8, on cement posts, and a hay barn or barracks, 30x60, supported on concrete blocks or posts two feet in the ground.

The lease for the year 1917-1918 provided for a rental of $2,800, and for the year 1918-1919 for a rental of $3,600.

The plaintiffs contend that the defendant has no right to remove any of the property referred to for the reason that he is estopped to claim any building as his own on the leased property because in the lease for the year beginning March 1, 1918, the lessor leased to him the premises therein described "with all the buildings thereon," and he covenanted to "deliver up to said lessor  *  *  *  heirs, devisees or assigns, the said premises in as good order and condition as they now are or may be put  *  *  * and take good care of all buildings and improvements while on said farm, or which may be placed thereon during this lease." It is claimed that the defendant by this language admitted the ownership of the buildings to be in the Harrisons when the lease was made, that the Dunkels when they purchased relied on the recitals in the lease, and that defendant will not now be heard to contradict the same. We are unable to find an estoppel in this language, because we regard the phrase "with all the buildings thereon" as mere surplusage. If there was no dispute here as to the ownership of any of the buildings, and it was the ordinary transaction where prop-

erty is leased in the usual form, the phrase "with all the buildings thereon" would be mere surplusage. Now we take it that the language must be construed in this lease as it is ordinarily construed, and that the parties to the lease must have understood it as it is ordinarily understood. And ordinarily a lease, which, in the granting clause, merely describes the premises, and one which adds to the description of the premises the phrase "and all the buildings thereon," mean one and the same thing. In either case the property leased is the entire real estate, both land and buildings, which are a part of the real estate and are owned by the lessor, and the language in either case includes nothing more. Further, the language of the lease must be construed according to the way it would be understood generally by intelligent people, and not according to the way in which Mr. Dunkel says he understood it, and for which reason relied upon it. We must hold that the Dunkels understood by the language of the lease just what would be understood by intelligent people, just what we now say the lease means. The Dunkels claim that when they bought they had no knowledge of any controversy in regard to the buildings. They say they did not know that Hedges was claiming any of them. So from their standpoint the lease was the usual and ordinary conveyance, and the additional phrase "with all the buildings thereon" could mean nothing more to them than a lease without such phrase. How then can they claim any estoppel? They have not been deceived by the language of the lease, or if they have it is because they misconstrued it, and they cannot now take advantage of a phrase which should not have meant anything to them when they purchased the property.

The plaintiffs claim that the defendant has no right to remove the property from the premises for the further reason that when he executed the last lease he made no reservation of a right to remove any buildings or improvements he had placed on the premises.

The majority of courts hold that a "tenant having a right to remove trade fixtures during his term, loses that right, if he fails to reserve it, when he continues in possession after the expiration of his term under a new letting or agreement." *Cook* v. *Scheid*, 8 Am. Law Rec., 493, 6 Dec. Rep., 867, 19 Cyc., 1069.

But the courts of last resort in a number of states hold the opposite opinion: *Van Ness* v. *Pacard*, 2 Pet., 137, 7 L. Ed., 374; *Harkness* v. *Sears & Walker*, 26 Ala., 493, 62 Am. Dec., 742; *Kerr* v. *Kingsbury*, 39 Mich., 150, 33 Am. Rep., 362; *Sassen* v. *Haegle*, 125 Minn., 441, 147 N. W. Rep., 445, 52 L. R. A., N. S., 1176; *Ogden* v. *Garrison*, 82 Neb., 302, 117 N. W. Rep., 714, 17 L. R. A., N. S., 1135; *Radey* v. *McCurdy*, 209 Pa. St., 306, 58 Atl. Rep., 558, 103 Am. St. Rep., 1009, and *Wittenmeyer* v. *Board of Education*, 10 C. C., 119.

When the case of *Cook* v. *Scheid* was decided by the superior court of Cincinnati the court stated that "the Michigan case [*Kerr* v. *Kingsbury*] stood alone," and that was no doubt the reason why the court felt bound to follow the prevailing opinion. But the case of *Wittenmeyer* v. *Board of Education*, *supra*, decided in 1895, a much later date than that of *Cook* v. *Scheid*, shows a tendency in our state to break away from the former holding, because it quotes with approval the Michigan case, *Kerr* v. *Kingsbury*. A number of supreme courts have fol-

lowed this last named case, as will appear by the list above referred to. Therefore, we feel perfectly free to follow either the majority of decisions or the later decisions, and we have decided to follow the later cases, because, as stated by Judge Curtain of the common pleas court, the line of cases following *Kerr* v. *Kingsbury* "is more in harmony with the spirit of our times and the system of our government." The opinion in *Radey* v. *McCurdy, supra,* quoting *Darrah* v. *Baird,* 101 Pa. St., 265, contains the following:

"It is a well settled rule of law, that a tenant for years who erects fixtures for the benefit of his trade or business, may, at any time during the term, remove them from the demised premises; but cannot after the expiration thereof unless he remain in possession and hold over, so as to create an implied renewal of the lease."

Jacob W. Hedges was in continuous possession of the premises from 1893 to 1918, a period of twenty-six years. His lease for the last year, March, 1918, to March, 1919, was executed on the 6th day of September, 1917, and was in effect a renewal or extension of the lease of 1916 at an increased rental. The following language from *Devin* v. *Dougherty,* 27 How. Prac., 455, puts the matter fairly and justly, as follows:

"As the new lease was intended merely to provide for a further occupancy of the premises, and that for the same purposes, I see not why it was necessary for the tenant to reserve in it any rights in regard to a thing which was his, and which it must have been understood he was to continue to use as his own during his new term. He hired for a second time his landlord's premises; but how can that be said to be also a hiring of property, upon these premises,

which belonged to himself, and which, as yet, he had a right to use upon those premises under a lease still in force? What need was there of any agreement as to what he then had a right to remove, and an equal right to continue to use upon the premises as long as he secured the right to the occupancy of such premises?''

The plaintiffs further contend that since the premises were conveyed to them by warranty deed they are innocent purchasers for value and all the buildings pass to them by such deed. But this view does not take into account the fact that Hedges was in possession at the time the deed was made to the plaintiffs. They were bound to inquire of him what his claims were, and this they did not do. As such purchasers they are presumed to have notice of all the rights of the tenant in the premises. *Sassen* v. *Haegle, supra; Crooks* v. *Jenkins,* 124 Iowa, 317, 100 N. W. Rep., 82; *Brinser* v. *Anderson,* 129 Pa., 376, 11 Atl. Rep., 809, 18 Atl. Rep., 520; *Ogden* v. *Garrison, supra; Friedlander* v. *Ryder,* 30 Neb., 783, 47 N. W. Rep., 83; and *Niles* v. *Cooper,* 98 Minn., 39, 107 N. W. Rep., 744, 13 L. R. A., N. S., 49.

In *Crooks* v. *Jenkins, supra,* the opinion, at page 321, uses the following language:

''The doctrine has long prevailed in England that the possession of a tenant or lessee is not only notice of all his rights and interests connected with or growing out of the tenancy itself or the lease, but is also notice of all interests acquired by collateral or subsequent agreements.''

We find from the evidence that the tenant house, corn crib and hay barracks were at the time of the bringing of this action the property of the defendant.

A decree will be drawn in accordance with this opinion.

*Judgment for defendant.*

MIDDLETON and MAUCK, JJ., concur.