LANTIS, APPELLEE, *v.* PAPNER ET AL.; MANAGEMENT COMMUNICATION CONSULTANTS, INC., APPELLANT.

(No. C-820698—Decided June 1, 1983.)

*Messrs. Wood, Lamping, Slutz & Reckman* and *Mr. James A. Reichert,* for appellee.

*Messrs. Griffin & Fletcher* and *Mr. Michael C. Fletcher,* for appellant.

BLACK, P.J. The single issue is whether or not a mortgagee is charged with constructive notice of certain rent reduction provisions of a pre-existing, unrecorded lease pursuant to which the lessee was in possession at the time the mortgage was recorded, when the lease contains a promise by the lessee not to disclose the terms and conditions of the lease. The trial court decided that the mortgagee was not chargeable with constructive notice and entered judgment in her favor, and we concur.

The owner of the three-story, multiple-occupancy building in question and defendant-appellant Management Communication Consultants, Inc. ("tenant") entered into a written lease of third floor space in the building for a term of five years beginning August 1, 1980, renewable for another five-year term. The lease provided that the tenant would make and pay for all improvements to its space, and that the total cost paid by the tenant would be credited as rent against the monthly installments.[1] An addendum to the lease, however, contained the following clause:

"10. NONDISCLOSURE: For pur-

---

[1] The first year's rent was $15,552, and for the next four years the rent would fall within a range of $15,552 to $31,104 per year depending on the space actually occupied by the ten-

poses of confidentialty [*sic*], Tenant agrees not to disclose the terms and conditions of this lease. Tenant and Landlord agree to execute a supplemental memorandum copy to record in lieu of the actual lease."[2]

No memorandum of lease was recorded until after the owner executed a mortgage to plaintiff-appellee Margaret B. Lantis ("mortgagee"), securing an obligation for $160,000.[3] Recorded on January 20, 1981, this mortgage was second to a prior mortgage, but we will refer to it as "the mortgage." A memorandum of lease was recorded September 16, 1981, without any information in it about the rental credits arising from costs of improvements. The mortgagee began foreclosure proceedings on September 24, 1981, and after a series of court proceedings,[4] the court journalized an entry holding the lease junior to the mortgage and ordering a distribution of net proceeds of the foreclosure sale that included no amount for the tenant.[5]

The record discloses that while the mortgagee knew that the tenant was in possession of part or all of the third floor of the building, she did not personally know of the existence of the lease until after the foreclosure action was filed, a receiver had been appointed and the tenant refused to pay rent because it had not been fully credited with the costs of its improvements.

Under R.C. 5301.23, the mortgage *sub judice* was effective from January 20, 1981, the day it was delivered to the county recorder for recording. The lease was obviously effective between the owner-lessor and the lessee. Having a term exceeding three years, it should have been recorded, R.C. 5301.08, and a duly recorded memorandum of lease would have been constructive notice of whatever information it contained, R.C. 5301.251. Until recorded, the lease was "fraudulent," under R.C. 5301.25(A), so far as relates to a subsequent bona fide purchaser having no knowledge of its existence.[6] A line of Ohio cases, however, holds that despite this statutory language,

---

ant. The court stated in an entry that the "total cost of improvements" was $62,000, but then set aside only $30,000 to protect the tenant's share of the foreclosure sale proceeds in case its judgment was reversed on appeal. We cannot explain this discrepancy, but it is clear that the tenant's claimed share of the foreclosure sale proceeds was substantial.

[2] The reason for this extraordinary promise of nondisclosure was to keep from the other occupants of the building certain rental advantages granted to the tenant.

[3] During oral argument, counsel stated that the "obligation" secured by the mortgage was in fact an existing judgment the mortgagee had obtained against the owner, but the record before us fails to substantiate that statement. We do not base our decision on the existence of any such judgment predating the lease.

[4] Some of the procedures were unusual, but since none of these was assigned as error and none affected a substantial right of any party, we ignore them. This decision shall not

be taken, however, as approval of the method used to decide the priorities in the distribution of judicial sale proceeds: it was done by motion for summary judgment filed after the sale was ordered and confirmed. We review the legal issue *sub judice* on the basis that the parties do not dispute any of the factual fundament underlying the determinative principles of law.

[5] The sale produced $500,000, an amount that fell short of satisfying court costs, taxes and assessments, the first mortgage and the second mortgage, by $55,589.52. Mortgagee was awarded a deficiency judgment against defendant Donald F. Papner in that amount. Obviously, the tenant could participate in the sale proceeds only if its equity prevailed over the second mortgage.

[6] R.C. 5301.25(A) reads:
"All deeds, land contracts referred to in division (B)(2) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in section 5301.23 of the Revised

a purchaser or mortgagee of real estate who knows that all or part of it is in the actual possession of a third party (such as a lessee) is charged with the notice of the third party's equitable rights. *Schloss* v. *Brown* (1920), 13 Ohio App. 294, 296, citing five prior Ohio Supreme Court decisions[7]; see, also, *Kemp* v. *Feldman* (1948), 84 Ohio App. 154 [39 O.O. 173]; *Dunkel* v. *Hedges* (1921), 15 Ohio App. 259; and Annotation (1951), 17 A.L.R.2d 331.

Despite the fact that the mortgagee knew of the tenant's possession and was therefore charged with knowledge of the tenant's equities as a lessee in possession, one other circumstance of this case removes it from the principle of constructive notice chargeable against a mortgagee: the tenant's promise of non-disclosure. Insofar as that promise stood as a barrier to any inquiry the mortgagee might have made, it prevented her from finding out about the tenant's rights, and it was deceptive, if not actually fraudulent. We cannot perceive how justice would be served by imposing a duty on the mortgagee running in favor of the tenant to discover matters the tenant had promised not to disclose. "He who seeks equity must do equity," is a principle irrevocably established in Ohio jurisprudence.

The single assignment of error[8] has no merit. We affirm.

*Judgment affirmed.*

DOAN and KLUSMEIER, JJ., concur.

---

Code, shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument."

[7] *Bettner & Bettner* v. *Zeck* (1923), 1 Ohio Law Abs. 523, appears from the abstracted report to express a principle diametrically opposed to *Schloss* v. *Brown, supra,* but research discloses the two cases are not inconsistent. The *Bettner* decision stated that it fell within the rule of *People's Building, Loan & Savings Co.* v. *McIntire* (1921), 14 Ohio App. 28, which held that a lessee under an unacknowledged, unrecorded and void lease (in that case, for one year, renewable for four successive one-year terms), was a tenant from year-to-year at the will of the lessor. The lessor may refuse to renew the tenancy as of the end of any "lease year," and when he does so, the lessee's rights in the property terminate.

[8] The single assignment of error reads:

"The trial court's granting of the plaintiff-appellee's motion for summary judgment was against the manifest weight of the evidence and contrary to the applicable law."

Since the judgment appealed from was a ruling on a motion for summary judgment, *ipso facto* it could not be "against the manifest weight of the evidence." We conclude it was not "contrary to the applicable law," a phrase that includes the decisive principles of equity recited above.