**LELE H. DALY, Plaintiff**

v.

**MYLER KIER, et al., Defendants**

Civil No. 106 - 1950

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

January 21, 1952

DUDLEY & HOFFMAN (GEORGE H. T. DUDLEY, Esq., of Counsel , *for plaintiff*

HARRY DREIS, *for defendants Kier*

MAAS & BAILEY (WILLIAM W. BAILEY, Esq., of counsel), *for defendant Christensen*

See, also, 2 V.I. 227.

MOORE, *Judge*

This is an action for waste and conversion brought by the vendee of real estate, Mrs. Lele Daly, against the tenants of the property, Mr. and Mrs. Myler Kier, and against the vendor, Mr. Ludvig Christensen. There is also a counterclaim in this action, filed by defendants Kier, for certain articles alleged to have been retained and converted by plaintiff.

Plaintiff was represented by Attorneys Dudley and

Hoffman, Geo. H. T. Dudley, Esquire, of counsel. Defendants Kier were represented by Attorney Harry Dreis, and the attorneys for the defendant Christensen were Maas and Bailey, William W. Bailey, Esquire, of counsel.

Defendant Ludvig Christensen, acting agent for the owner, Paul Dante Beretta, a minor, and his mother, Ella May Beretta, rented the property at Nos. 26 and 27 Dronningens Gade to the Kiers on a month to month basis. Defendants Kier sublet the basement apartment of said property to Lele Daly, plaintiff herein. Three months later, on February 23, 1950, the Kiers requested Lele Daly to vacate the premises by March 13th. In the interim, Lele Daly bought said property which had been up for sale, from agent Ludvig Christensen, signing a contract of sale on March 10, and a purchase Deed on April 17th. Upon the close of the deal, Lele Daly's lawyer, Louis Hoffman, Esquire, notified the Kiers of the sale, and informed them that she would require the entire premises for her use by May 20th. Before moving out, the Kiers removed certain items which they had installed in the bathroom, kitchen and other places at their own expense, and replaced the old fixtures which were in the property when they moved in. It is claimed by plaintiff that these items removed by the Kiers were a part of, and belonged to, the property which Christensen sold and which she bought.

The real estate in question was sold to the plaintiff for $25,000.00 and the Warranty Deed provided, in part, as follows:

"Grantors hereby grant and convey to Grantee, her heirs and assigns, all their right, title and interest in and to the parcel of land known and designated as: No. 26 & 27 Dronningens Gade, Charlotte Amalie, St. Thomas, V. I., as more particularly described in the attached Measure-Brief made a part of this Deed, *together with all improvements thereon.*" (Italics supplied)

210

Plaintiff brings suit against the Kiers and Christensen for the removal from the premises of the installations (fixtures), and for the damage caused thereby to the amount of $5000 for restoration and repair of said premises.

Plaintiff testified in court that she became a tenant of the Kiers on November 22, 1949, when she was given a lease for three months with an option of renewal, and that on February 23rd of the following year she was asked to move. In her search for a place she said that she was approached by one Billy Christensen who asked whether she would like to buy the property in which she was at present a tenant. During the negotiations for the sale of said property, the question of fixtures came up, and the said Billy Christensen, son of the agent of the property, told her that "the things affixed to the realty went with the realty," and on another occasion, that "anything affixed to the real estate was parcel of the real estate." Subsequently, a contract of sale was prepared by her attorneys and signed in their office on March 10, 1950. Defendant Ludvig Christensen, agent for the property, was present at this meeting, along with his son, and testified that he announced to all present, including the plaintiff and her lawyer, that "he wanted it understood before he signed the contract that there are certain fixtures in the property that do not belong to the property and which I can not sell." He further testified that no comments were made and no questions raised with respect to this statement then or at any other time. Following the execution of this document, upon the request of plaintiff's attorney, Louis Hoffman, Esquire, defendant Christensen took him to view the premises. Defendant Christensen testified that he pointed out to him, on entry, certain "fixtures" which belonged to the Kiers. Attorney Hoffman was then taken through the house by the defendants Kiers, and shown

211

the rest of the fixtures by them. They testified that they showed him the "fixtures" which they claimed as their own and which they intended to remove unless his client wished to buy them at the price which they paid for them at Sears, Roebuck and Company.

Subsequently, on April 17th, a deed of purchase was executed and signed by Ludvig Christensen as agent for the owner. A purchase-money mortgage was also executed on the same day and two days later, Mr. Hoffman on behalf of plaintiff notified the Kiers of the sale and requested them to move by May 20th. Plaintiff testified that subsequent to this notice she heard hammering and the falling of plaster upstairs and later the gushing of water down into her own apartment. Thereupon, an order was secured from the court restraining the removal, by defendants, of "certain fixtures attached to the realty," namely, one recessed kitchen sink, one heavy duty electric cable, one attached bar with shelving, one bathtub, two toilets, and two washstands. Defendant Myler Kier testified that the said order was received after the removal from the premises of the fixtures which they had put in, to wit: one bathtub, one washstand, one sink, and one toilet. He said that they had also installed one water heater in the basement, but his electrician was refused entry to detach and take away this item. According to the testimony of the Kiers and their workmen, the removal of the items installed by them and replacement of the fixtures which were in the house when they entered took only one day. Defendant Marion Kier testified that she personally inspected the premises before leaving and that everything was in as good condition as when they entered. Plaintiff testified that when she inspected the premises after the Kiers left, she discovered the following:

(1) the bathtub had been removed;
(2) the toilet had been removed and an old one put in its place which did not fit and did not work;

212

(3) cabinets had been removed from the kitchen;

(4) shelves and other fixtures had been removed from the bathroom;

(5) a heavy duty electric cable had been taken out;

(6) the walls were disintegrated and water was gushing everywhere;

(7) the washroom in the attic had been dismantled; pipes had been hammered down and the washstand and toilet had been removed;

(8) salt water was running through all of the plumbing;

(9) there were holes all over the wall;

(10) electric fixtures and wiring were missing.

The complaint alleged three additional items as having been wrongfully removed: one new kitchen sink, one other washstand, and one attached bar and shelving. In order to rectify this damage, plaintiff claims that: (1) it was necessary to buy, and that she did buy, new fixtures to replace the old ones found and those missing, and that these new fixtures were substantially the same as those removed, except as to color and the fact that hers were bought in New York instead of ordered from Sears, Roebuck and Company; and (2) that it was necessary to put plywood to cover up the holes in the walls and to repaint practically the whole place. As a result of the extensive repairs necessitated, plaintiff claims that she was deprived of the occupancy of her house until November, 1950.

With regard to the costs and expenditure involved, plaintiff could give none of the details, as her business manager had handled the repairs, and he was not available for testimony at the time of the trial, nor could she say of her own knowledge how much of the work done was replacement and how much was new and additional.

On cross-examination plaintiff admitted that she had been a frequent visitor at the Kier apartment and knew that they had considerably improved the place, but did not know specifically what they had installed, apart from the water heater, and the chandelier. However, in making

her replacements, she testified that she had compared the prices with those in Sears, Roebuck and Company where she knew the Kiers had bought the fixtures which they had installed. Plaintiff further said that it was her belief, strengthened by the assurances she had received from Billy Christensen, that whatever the Kiers had installed could not be removed, and that she had discussed this with her lawyer before she drew up the contract and deed. Nevertheless, she admitted she knew that neither the contract nor the deed contained any mention of fixtures.

According to the testimony of the Kiers, and as corroborated by Ludvig Christensen, permission was granted the Kiers to make certain installations for their own use and convenience, provided that on their removal any such fixtures removed by them would be replaced by the old ones. With this understanding, the Kiers claimed that they put in one bathtub, one toilet, one washstand, one sink, a water heater and a chandelier. This testimony was corroborated by the plumber, electrician and carpenter, who also testified that they removed those very same items with the exception of the water heater, and restored the same old ones previously removed. The Kiers further testified that plaintiff, with whom they were originally very friendly, had been taken through the house and shown the additions, installations and improvements which they had made on their own, and for their own comfort and convenience.

The counter-claim filed by defendants Kier alleges that certain items which were placed in plaintiff's apartment for her use during the term of her tenancy were never returned to the owners Kier. Listed in the original counter-claim were the following items: one antique clock, valued at $100; one mahogany serving tray, belonging to a lazy Susan and valued at $50; one "Desert" etching valued at $25; one Mexican straw matting worth $10; and one bridge

214

table valued at $50. During the trial defendant Marion Kier said that she had also missed, in addition to the above items, a Gooson painting worth at least $100 and which she remembered having loaned to plaintiff. Regarding this counterclaim, plaintiff stated that she had never been given an inventory of the things in her apartment and that there were at least three items on the list which were never in her apartment: the Gooson painting, the "Desert" etching, and the mahogany tray. The clock and the bridge table were personally returned to the Kiers, which they admitted. Plaintiff also says that the Mexican mat was taken by the Kiers when they moved their things from her apartment. In addition to these items of furniture, the Kiers are claiming the water heater and piping thereto which plaintiff refused to allow the electrician to remove.

At the request of both sides, the Court inspected the premises and found this to be a very old frame house of more than fifty years. It was much deteriorated both inside and outside, and the Court could not find much above the natural depreciation of an old frame house of that age. The Court was shown the room which it was claimed was flooded with water, and was also shown the place where it was claimed shelves had been removed. The sink had been replaced, the bathroom had been refurnished with more elaborate fixtures, and the pipe upstairs had a broken top which required minor repairs. On the whole, the Court could find no justification for the exaggerated claims of destruction and waste as made by the plaintiff. The outside wiring and electricity had been replaced within the walls and considerable modernization had been made by plaintiff who wished to make a more modern home of this old house.

This case presents three questions for the Court:

(1) Whether the Kiers had a right to remove the fittings which they had installed, or whether they were non-removable fixtures?

215

(2) What, if any, damages did the plaintiff suffer which was caused by defendants Kier in the removal of the installations by them?

(3) Whether defendant Christensen represented to plaintiff that he was selling the installations of the Kiers along with the realty and whether the words of the deed "together with all improvements thereon" constituted a warranty of sale of these fixtures?

■-■ With regard to the first question as to whether the Kiers had a right to remove the fittings which they had installed, it is necessary to determine whether they are "fixtures" within the contemplation of the law.

Fixtures are a species of property which are the dividing line between real and personal property and there is much confusion in the exact definition of the term. For instance, it has been held to denote articles of a chattel nature, which when once attached to the realty may not be removed by the party who affixed them. That was the old, original common law. But it has often been held that the very reverse is true: that chattels annexed may be removed by the party affixing them (Bouvier). However, a more common definition and one which is sustained by most authorities is that " a fixture is an article which was a chattel, but which, by being physically annexed or affixed to the realty became accessory to it and a part and parcel of it." Fechet v. Drake, 12 Pac. 694, 695, 2 Ariz. 239.

■ As to how one determines whether a chattel has become part and parcel of the real estate, the courts are agreed on certain requisites: (1) actual annexation to the realty or something appurtenant thereto; (2) application to the purpose to which that part of the realty is appropriated; and (3) intention to annex it permanently. Gasaway v. Thomas, 105 Pac. 168, 170, 58 Wash. 77; McConn v. Drewsm, 265 N.W. 160, 221 Iowa 227; Schmelling v. Rockford Amusement Co., 154 Ill. App. 308;

216

Shelbyville v. Hartford, 105 S.W.2d 217, 218, 268 Ky. 135; Willis v. Beeler, C.C.A. Ohio, 90 F.2d 538, 541; Bankers' Life Ins. Co. v. Ohet, 270 N.W. 497, 502, 131 Neb. 858; Equitable Life Assur. Soc. of U. S. v. Chapman, Iowa, 382 N.W. 355, 357; Bankers' & Merchants' Credit Co. v. Harlem Park Bldg. & Loan Assn., 153 A. 64, 66, 160 Md. 230.

█ █ The fittings and installations in question were attached to the property by being fitted to the pipes and plumbing, in most instances. This was the case with the toilets, the washstands and the water heater. The bathtub replaced a shower stall but, according to the testimony, it was not fitted into the wall as is usual with built-in bathtubs, but was, by design, placed four inches from the wall and a thin layer of plaster put between the tub and wall in order that water should not get on the floor between. It was testified by the electrician that the chandelier was merely lifted onto a hook. While, for the sink in the kitchen, a special wooden cabinet was built which was nailed to the wall, but the sink itself rested on the cabinet and was not attached to the wall. The mere fact that personal property is attached to the freehold by nails or otherwise does not, as a question of law, render it a part of the realty. Copp v. Swift, Tex., 26 S.W. 438, 439; and Markey v. Cain, 6 S.W. 637, 639, 69 Tex. 146.

With further reference to the type and permanency of the annexation, we note that it took the plumber less than a full day to remove the bathroom, washroom and kitchen fittings and to replace the original ones which went with the property when rented by the Kiers. It was also testified that on that same day the carpenter and mason were able to complete the repairs necessitated by the removal and replacement operations. This included the re-installation of the shower stall where the tub had

been placed. Obviously, the repair work involved could not have been substantial.

The Court concludes that the fittings were "annexed" in such manner as to make them easily removable without causing substantial damage to the property.

■ ■ The Supreme Court of Massachusetts, in Whitting v. Braston, 4 Pick. 311, held:

"There seems to be no doubt that, according to the later decisions in England, and several cases in our own books, a tenant for life, years, or for will may, at the expiration of his estate, remove from the freehold all such improvements as were erected or placed there by him, the removal of which will not injure the premises or put them in a worse plight than they were in when he took possession."

And in Teaff v. Hewitt, 59 Am. Dec. 645, the court observed:

"All that is required of a tenant is to leave the land in as good condition as it was when he received it. When, therefore, a tenant erects expensive structures for carrying on his trade or business, which can be removed without their destruction or material injury to the freehold, the presumption is a rational one that it was not the intention of the tenant to make them permanent accessions to the freehold, and thereby donations to the owner of it. The intention of the tenant, clearly inferable from his situation and relation to the landlord is the real foundation of the right of the removal with which he has been favored."

With respect to the second requirement of a "fixture," that of application to the purpose of the realty, it is to be noted that the Kiers were tenants on a month to month basis, with knowledge that the property was for sale, and had requested permission of their landlord, Ludvig Christensen, to put in certain things for their own use, comfort and convenience. There is nothing to indicate that they intended to enhance the value of the property or that Ludvig Christensen considered the installations part of the realty and irremovable.

218

**■■** The third requisite for a "fixture" is evidence of intention of permanent annexation. Of the three factors taken into consideration in determining what is a fixture, it is almost uniformly held that the element of intention is controlling, and that the other two are evidence of this intention. Casaway v. Thomas, 105 Pac. 168, 170, 56 Wash. 77; Blake McFal Co. v. Wilson, 14 A.L.R. 1281; Clark v. Clark, Tex. Civ. App., 107 S.W.2d 421; McRea v. Central Nat'l. Bank, 66 N.Y. 489, 498. The matter of physical annexation is relatively unimportant and intention of parties is principal consideration. Standard Oil Co. v. LaCrosse Super Auto Service, 258 N.W. 791, 217 Wis. 237, 99 A.L.R. 60. "It is well settled that chattels may be annexed to the real estate and still retain their character as personal property." (Voorhees v. McGinnis, 48 N.Y. 278, and cases there cited.)

Defendants Kier had only a very temporary interest in the premises, being month to month tenants with a knowledge that the property was for sale. In fact, they had sought a lease from the agent of the property and were informed that he could not grant one as the property was up for sale. The record further shows that they requested permission both from Billy Christensen and Ludvig Christensen to make certain installations at their expense, with the understanding that they could remove them at any time they moved from the premises. This proposition was agreed to by the Messrs. Christensen, provided that the old fixtures were replaced before they moved. The Kiers kept the old fixtures, which is further evidence of their intention to replace them, and, in accordance with their agreement with Christensen, replaced the old fixtures which they found in the property when they moved in.

The Court is satisfied that there was no intention, either on the part of the tenants or agent-landlord, to

have the chattels in question become a part of the realty, and it is well settled that "parties may by agreement give to fixtures the legal character of realty or personalty at their option and the law will respect and enforce their understanding whenever the rights of third parties will not be prejudiced." Myrich v. Bill, 17 N.W. 268, 269, 3 Dak. 284. The case of Henkle v. Dillon, 17 Pac. 148, 150, 15 Or. 610, further explains this rule of law:

"When things personal in their character are about to be annexed to the realty, and before such annexation the parties by express agreement provide that such chattels shall retain their character as personalty, they do retain their character as chattels. Although attached to the realty in such manner that without such agreement they would receive that character, they will continue to be chattels, if they can be removed without material injury to the articles themselves or to the freehold."

■■■ The relationship of the parties also has a bearing on the application of the law as to fixtures. Thus, the court remarked in McLain Inv. Co. v. Cunningham, 873 W. (sic.) 605, 606, 113 Mo. App. 519, that "the common law rule has been relaxed as to the question between landlord and tenant, and what would be a fixture as between vendor and vendee, or mortgagor and mortgagee, does not apply to landlord and tenant." And in Davis v. Mugan, 56 Mo. App. 311, the court explained that "what constitutes a fixture depends largely upon the circumstances of each case. In controversies between landlord and tenant there is the most liberal indulgence toward the claim of the tenant." To the same effect see Wall v. Hinds, 64 Am. Dec. 64, 72.

In Winslow v. Merchants' Inv. Co., 45 Mass. (4 Metc.) 306, 314, 38 Am. Dec. 368, the court laid emphasis on the temporary nature of the interest, saying: "In cases of those holding only a temporary and not a permanent interest in land, the rule is much relaxed in favor of those who make improvements on the real estate of others."

In the case of Harkey v. Cain, 6 S.W. 637, 639, 69 Tex. 146, involving an agreement between parties in the same relation as those before us, the court said:

"When the owner of the land attaches personal property to it as a permanent accession to the value of the freehold, it becomes a part of the realty. A tenant, on the other hand, who with the consent of his landlord annexes chattels to land in such manner that they can be removed without damage to the realty, does not thereby, part with his title to them."

■■■ It is generally held that an innocent purchaser without notice is not subject to or affected by the right of the tenant to remove improvements made at his expense. If, however, the vendee has notice of the tenant's interest in the property, he purchases the property subject to the right of removal by the tenant. Searle v. Roman Catholic Bishop, 203 Mass. 493, 89 N.E. 805, 25 L.R.A. (n.s.) 992; also see L.R.A. 1915E. 822, 823, and 16 R.C.L. p. 538ff.

A purchaser of land in possession of a tenant is usually charged with notice of any title the tenant may have to buildings, installations, or other additions to the property. Kerr v. Kingsbury, 39 Mich. 150, 33 Am. Rep. 362; Sassen v. Hoegle, 125 Minn. 441, 147 N.W. 445, 52 L.R.A. (n.s.) 1176; Ogden v. Garrison, 82 Neb. 302, 117 N.W. 714, 17 L.R.A. (n.s.) 1135; Freidlander v. Ryder (Friedlander v. Hewitt), 30 Neb. 783, 47 N.W. 83, 9 L.R.A. 700.

In Ogden v. Garrison, supra, it was held that:

"It is the rule that a purchaser is chargeable with notice of a tenant's rights, when the latter is in the actual possession of real estate at the time that it is sold."

And further:

"The doctrine of constructive notice finds its most frequent application, perhaps to purchasers; and the general rule is unquestioned, that he who purchases real estate when a third person is in possession, is put upon inquiry as to the occupant's rights and chargeable with notice of all facts which a reasonable investi-

gation would disclose. If in such a case, he buys without making an inquiry concerning the rights or title of the occupant he cannot, generally speaking, be regarded as a bona fide purchaser." Crooks v. Jenkins, 104 Am. St. Rep., 333, 353, and pages.

█ In addition to the law of constructive notice discussed above, there is also present in the case at bar, actual notice on the part of both plaintiff and her counsel. There is no question that plaintiff, having been a frequent visitor at the Kiers' apartment, had knowledge of the installations and general improvements made by the Kiers at their own expense. Both she and her attorney were present at the meeting at which defendant Christensen announced that there were "certain fixures" in the property which did not belong to it and which he could not sell. With this knowledge the contract of sale was signed by plaintiff in the presence of her attorney. Subsequent to that, plaintiff's attorney visited the premises and was shown the installations made by the Kiers and was told that they intended to remove them unless his client wished to buy them at the Sears, Roebuck and Company prices which they paid for them. Although it was known that these installations were claimed by the Kiers and their claim acknowledged by Christensen, no mention was made of fixtures in the subsequent deed, which was drawn by plaintiff's attorney at his own suggestion.

█ The plaintiff now says that defendant Christensen sold these (Keir) installations with the property and in support of her claim cites the language of the deed and, in particular, the clause "together with all improvements thereon," as well as the representations made by Billy Christensen which were quoted in the statement of facts.

In view of the foregoing, the word "improvements" in the deed cannot be construed to comprehend "fixtures" which were installed by the Kiers. The clause referred

222

to, in the deed, was inserted by plaintiff's attorney at a time when he knew that these fixtures were claimed by the Kiers as their own, and at a time when he knew that Christensen said he was not selling them. It appears clear that both sides understood that the language with reference to "improvements" included only such improvements as legally went with the property, and could only include defendants' "fixtures" if they were improvements which went with the property as a matter of law.

 With respect to the second question as to what, if any, damage was done by the defendant in the removal of these fittings, plaintiff's major claims are as follows:

First, that the water pipes throughout the house were filled with salt water. Plaintiff's plumber, however, testified that "someone," by mistake, had turned off the fresh water valve and turned on the salt water valve, thus allowing salt water to fill the pipe, and that all he had to do to remedy this situation was merely turn off the salt water valve and turn on the fresh water valve, then wait for a period of about two hours for the fresh water to force out the salt water.

Plaintiff also claims that because of broken electric wires, it was necessary to rewire the entire house at a cost of $1184.45, which she did. However, the electrician who did this work for the plaintiff, and who was called as a witness for the plaintiff, testified that he found no broken wires, except the two disconnected leads to the chandelier in the living room which both sides agree that plaintiff had the right to remove. He further testified that the house was rewired solely because the old wires were worn out from deterioration. This house was formerly wired with the old fashioned box enclosed wire on the outside of the walls. This was removed entirely, and modern concealed wiring was run throughout the inside of the walls. Inspection showed also additional

switches, additional floor plugs, and additional outlets installed, both inside and outside of the house at plaintiff's own design.

Plaintiff also claims that the defendant's plumber left uncapped a water pipe in the attic and that when the plaintiff's plumber turned on the water, it flooded two rooms in the house. The defendant's plumber denies this to be true, and testified that if any such flooding occurred, it was attributable to the fault of the plaintiff's plumber. Inspection of the house showed some discoloration of the woodwork of one room in particular. However, the Court was unable to determine whether this discoloration was due to water or to age. Plaintiff claims that because of this discoloration to the woodwork, she was required to repaint the entire house. This claim is not borne out by the enormous paint job done by the plaintiff throughout the entire house, both inside and outside. It seems clear that in plaintiff's plans of repainting of the entire house this wall would have had to be included anyhow and, therefore, caused no extra expense to the plaintiff.

Plaintiff also claims damages for the broken tip of a soil pipe in the attic to which the toilet was connected. Inspection showed a broken flange of the upper joint of the said pipe. Defendant's plumber denied having broken this piece of pipe in removing the toilet and claimed to have left it intact. Since both plumbers had worked in the house, it is impossible to determine which one, or who actually broke it. However, the cost of replacing this small broken flange is so small as to be practically negligible.

Plaintiff also claims damages by reason of the removal by the defendant of the old painted pine wood back bar which the defendant had against a closed door because the casing of the door had nail holes where this back bar had been nailed to the casing, and claims the cost of

an exquisite mahogany front bar of different design which the plaintiff had installed. Plaintiff's carpenter testified, however, that he found no nail holes in the sash of the said door, but that he removed this door and closed the entire opening in order to make one solid wall for plaintiff in conformity with the new design for the mahogany front bar which plaintiff installed. Even if the door sash had contained nail holes no evidence was given as to why a new piece of sash could not have been simply put on.

Plaintiff also claims damages for the removal of shelves from the kitchen which she claimed were there before the defendants moved into the house. However, inspection with regard to this was negative. The defendant denied the removal of any shelves from the kitchen and neither plaintiff nor any witness in her behalf testified that, of his own knowledge, he knew such shelves to have been in the kitchen.

This court can find no specifically proven and actual or unexaggerated damages which the evidence in this case would show to have been done by the defendants for which recovery should be awarded to the plaintiff.

It is noted that the plaintiff has made no attempt in the evidence to prove the value of any fittings removed by the defendant nor the actual replacement value of any damage claimed, but that the plaintiff's evidence is all directed toward the cost to the defendant of the finer and more costly and modern installations put in by the plaintiff. This is, apparently, upon the theory that if the defendants did wrongfully remove fixtures that they are liable to the plaintiff for the amount paid by her for the finer, modern, and more expensive fixtures chosen by her, and that any damage done is to be compensated for in accordance with the changed and modern designs chosen by plaintiff.

The third question is whether defendant Christen-

sen represented that he was selling these "fixtures" and whether the plaintiff, without knowledge to the contrary, relied upon such representation in purchasing the house.

A "representation" to be construed as "warranty" must be affirmed as a fact and be understood by the parties as having that character. More specifically, the court in Snow's Laundry & Dry Cleaning Co. v. Georgia Power Co., 6 S.E.2d 159, 162, 61 Ga. App. 402, said that it "must be positive and unequivocal, and must not be merely a vague, ambiguous and indefinite statement of the seller regarding the property.

 The representation claimed to have been made by Billy Christensen was that "anything affixed to the real estate was parcel of the real estate." This statement is tantamount to a representation of law, and not of fact as is required and, therefore, cannot support a case of misrepresentation. Besides, plaintiff cannot claim to have relied on this statement as she had knowledge to the contrary and legal advice on the matter by her lawyer, who also had personal knowledge to the contrary. Further, there is nothing in the evidence to show that Billy Christensen had any authority to bind his father or the owners of the property or that he did any more than venture an opinion of his own about the law in the case, and everyone concerned knew that he was not a lawyer.

 In conclusion:

(1) The Court finds that defendant Kiers had a right to remove the fittings which they had installed and are not liable for doing so, and are further entitled to the return of the water heater.

(2) The Court cannot find by a preponderance of evidence that there is any proved, specific damages for which the plaintiff should recover.

(3) From the evidence the Court cannot find that defendant Christensen represented to plaintiff that he was

selling the installations of the Kiers along with the realty, nor can the Court find from the evidence that the clause of the deed "together with all improvements thereon" constituted a warranty of sale of these specific fixtures.

(4) As to the counterclaim of the Kiers for $350.00 for certain items of personal property "retained and converted" by plaintiff, including the water heater for $160.00, the Court is unable to find, by a preponderance of evidence, any unreturned articles held by plaintiff except the said water heater.

The Court is, therefore, of the opinion that no recovery is possible in this case either by the plaintiff or by defendants in their counterclaim, except for the recovery by the Kiers of the water heater of the value of $160,00, and that no attorneys' fees should be allowed to either side, but that all parties should pay their own attorneys' fees.

Decree may be drawn in accordance with this opinion.