**ROBERT E. SHANK, Plaintiff**

**v.**

**WILLIAM S. and/or JOSEPHINE HARVEY, Defendants**

S.C. No. 885/1978

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

April 5, 1979

ROBERT E. SHANK, Christiansted, St. Croix, V.I., *pro se*

JOSEPHINE HARVEY, Christiansted, St. Croix, *pro se and for William S. Harvey*

SILVERLIGHT, *Judge*

### MEMORANDUM OPINION AND JUDGMENT

Plaintiff, in this small claims action, seeks to recover money damages for allegedly unpaid rents, electric bills, and for damage to personal and real property, all arising out of defendants' occupancy of plaintiff's premises. The facts, as gleaned from the testimony of plaintiff, defendant Josephine Harvey, Sinclair Williams and Jose Ortiz, are relatively simple and, for the most part, undisputed.

On or about May 16, 1977, plaintiff as landlord and defendants as tenants entered into a written lease of premises commonly known and designated as "a furnished apartment consisting of four rooms, being Apartment 3B,

Mango Court Apartments, Tide Village, Christiansted, St. Croix, U.S. Virgin Islands." The lease was for a term of one year, commencing on June 1, 1977, and terminating on May 31, 1978, at the monthly rental of $295.00.[1] Defendants took possession of the premises prior to June 1, 1977, but there is no evidence that either party expected that a per diem rental would be charged for occupancy before commencement of the lease. Defendants finally vacated the premises on November 15, 1978, 5½ months after the termination of the lease. The holdover occupancy was by mutual consent, however, the defendants tendering the rent each month and the plaintiff accepting same. It is undisputed that the rent for the period November 1, 1978, to November 15, 1978, in the amount of $147.45 (calculated on a per diem basis), was not paid and still remains unpaid.

On November 16, 1978, the morning after possession of the premises was delivered to plaintiff by defendants, plaintiff inspected the premises and inventoried the furnishings. He discovered numerous items of household goods and furnishings which were in the premises at the commencement of the tenancy missing on November 16, 1978,[2] and also found the kitchen floor tiles stained, a formica countertop burned, certain portions of the stove and refrigerator in need of repair, and a toaster inoperable. Defendants have conceded that the final electric bill for the period October 18, 1978, to November 15, 1978, in the amount of $83.80, was not paid by them as required by the lease.[3] Although defendants deny that they caused (or had any knowledge of) the damages claimed to have been discovered by plaintiff, it is clear that such damages did, in fact,

---

[1] The lease, Plaintiff's Exhibit No. 1, in evidence.

[2] This inventory was compared to a written inventory admitted in evidence as Plaintiff's Exhibit No. 2, made by plaintiff at the commencement of the tenancy and examined but not objected to by the defendants.

[3] See the second paragraph on page 2 of Plaintiff's Exhibit No. 1, in evidence.

exist.[4] It is finally conceded by all parties that defendants are entitled to a credit in the amount of $295.00 which had been deposited as security "against non-payment of utilities, damage to property, or any other similar and rightful claim by the landlord."[5]

On these facts, the Court is presented with several distinct issues which require consideration and determination.

■ It is well settled that upon a holdover, all of the terms of the underlying lease, except those expressly modified by agreement of the parties, continue in full force and effect. Restatement of Property 2d, § 14.7.

In this case, therefore, the terms and conditions of the original lease must be examined and applied in order to determine the rights and responsibilities of the parties.

There is contained in the body of the lease the following language:

Tenant shall be responsible for any breakage or damage within the house, including damage to screens and glass, and for exterior damage to this or other property of the landlord if caused by tenant, his family, employees or guests. Landlord shall be responsible for the repair of any mechanical failure of all permanently installed equipment including refrigerator, stove, plumbing facilities, pump, and also for all necessary repairs of an external and/or structural nature, except for damage caused by tenant's negligence, in which case tenant shall be responsible.

The next paragraph of the lease provides:

Tenant shall maintain the premises in good condition at all times, and at the end of occupancy shall turn over the premises in the same condition as that in which they were received, ordinary wear and tear and damage by the elements excepted, unless caused by tenant's negligence.

Those terms clearly fix and determine the rights and liabilities of the parties.

---

[4] See Plaintiff's Exhibit No. 3, in evidence, a series of photographs which display the burned formica countertop and the floor tile stains. See also, Plaintiff's Exhibit No. 4, in evidence, the damaged floor tiles, and Plaintiff's Exhibit No. 5, in evidence, the damaged stove parts.

[5] See fn. 1.

This lease refers to the rental of certain personal property in conjunction with and in addition to certain real property. Simply stated, this lease imposes upon the tenant the responsibility for any and all breakage or damage within the house, whether it be to personal property or to fixtures attached to the real estate, but imposes liability for the repair of mechanical failures of all permanently installed equipment upon the landlord, unless caused by the tenant's negligence. It further provides that the premises shall be returned in the same condition as received, reasonable wear and tear and damage by the elements excepted.

Since plaintiff claims neither exterior or structural damages nor mechanical failure of permanently installed equipment, we need not address ourselves to such items.

██ Defendants, having at the end of the occupancy failed to return the realty to the landlord in the condition required by the lease, are liable for the damages to the floors and countertops and other fixtures.[6]

Plaintiff has established by a preponderance of the evidence that certain items of personal property were delivered to defendants;[7] that some of these items were returned in a damaged condition; and that some were not returned at all.

██ In a lease wherein personal property is included, the contract is treated as if it were a lease of the land and a bailment of the personalty. The rights and liabilities of the parties regarding the personal property are governed by the general principles of bailments. See Holmes v. Freeman, 185 A.2d 88; 49 Am.Jur.2d, Landlord and Tenant, § 196.

██ Generally, it has been held, where the bailee fails to

---

[6] A fixture, as that term is used in this context, is defined as a chattel attached to the realty which becomes accessory to it and part and parcel of it. Black's Law Dictionary, Fourth Edition, 766.

[7] Plaintiff's Exhibit No. 2, in evidence.

return the bailed property, or returns it in a damaged condition, a presumption that the loss or damage was the result of the bailee's negligence arises and prevails unless and until the bailee offers proof that his negligence was not the proximate cause of the loss or damage. Leake & Nelson Co. v. W. J. Megin, Inc., 111 A.2d 559; Frissell v. John W. Rogers, Inc., 106 A.2d 162.

In the case at bar, defendants have offered no exculpatory evidence of any kind and the record is otherwise devoid of any fact from which the defendants' lack of culpability can be inferred.

The only other question which then remains for disposition is that of damages.

The value of the property for purposes of ascertainment of the damages is ordinarily determined by reference to its fair market value if it has such a value. In the case of property which cannot be said to have any fixed market value, as, for example, household goods or wearing apparel, the measure of damages is the value of the goods to the owner or bailor; not any fanciful or sentimental value which he might place upon them, but such reasonable value as from the nature and condition of the goods, and the purpose to which they were adapted and used, they had to him. . . .

8 Am.Jur.2d, Bailments, § 333.

■ This rule of law, which may be designated the majority rule, has been recited in 63 A.L.R. 240 and the cases cited therein. It has been expounded at length in Merchant's Southwest Transfer & Storage Co. v. Campbell, 229 P. 542 (1924), wherein the court, in a syllabus opinion, held that:

In an action to recover against a bailee for hire for loss of household goods where the goods have a market value, the measure of damages for such loss is the cash market value thereof, the cost of replacing such articles, where they are of common use, and where such articles have no market value, the measure of damages is the value of the goods to the owner; not any fanciful value which he might place upon them, but such reasonable value as, from the

nature and condition of the goods and the purpose to which they were adapted and used, they had to him.

This Court adopts the above-stated rule as the prevailing rule of common law and the rule of decision in the Virgin Islands. 1 V.I.C. 4.

■ Put in simple terms, we hold that the owner of household furniture and furnishings may recover their useable value to himself and not merely their value to a second-hand dealer, though no sentimental value can be taken into account. 2 Sedgwick, Damages, 1508 (9th Edition).

■ We further hold that "where from the nature of the case the amount of damages cannot be proven with exactitude, all that can be required is that the evidence with such certainty as the nature of the case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." Holmes v. Freeman, supra.

■ In the case at bar, involving such items as a bathtub stopper, refrigerator butter dish, a toaster, doorstops, linens, cookware and utensils, and various other furnishings, ascertainment of depreciation is difficult if not impossible, and a ready secondhand market does not exist. The measure of damages, then, is the value of these items to plaintiff; it is the replacement cost of the articles in question, all as established by the plaintiff by a preponderance of the evidence, through the bills presented to the Court.[8]

For the foregoing reasons, we conclude that plaintiff should recover the sum of $83.80 for unpaid electric bill, the sum of $147.45 for the unpaid rent for 15 days of November 1978, and the sum of $485.86 as replacement, repair or cleaning costs as demanded by plaintiff, less a credit of $295.00, being the security deposit paid to plaintiff by defendants and retained by plaintiff.

---

[8] Plaintiff's Exhibit No. 7, in evidence.

A judgment in conformity with this Memorandum Opinion shall be entered.

## JUDGMENT

A Memorandum Opinion in the above-entitled matter having been entered this day; it is

ORDERED, ADJUDGED AND DECREED that plaintiff have judgment against the defendants, William Harvey and Josephine Harvey, jointly and severally, in the sum of $422.11, together with Court costs in the sum of $12.00.