**OSCAR JAMES, DOREEN JAMES and CARSALS, INC., Plaintiffs**
**v.**
**ANTILLES GAS CORPORATION, Defendant/Third-Party Plaintiff**
**v.**
**LAWRENCE HODGE and MARIA HODGE, Third-Party**
**Defendants/Fourth-Party Plaintiffs**
**v.**
**YEARWOOD ENTERPRISES, INC., d/b/a PARADISE GAS,**
**Fourth-Party Defendant**

Civil No. 193/1998

Territorial Court of the Virgin Islands,

Division of St. Thomas and St. John

July 19, 2000

37

JOEL H. HOLT, ESQ., Holt & Russell, Christiansted, St. Croix, U.S. Virgin Islands, *for Plaintiffs*

MICHAEL J. SANFORD, ESQ., Sanford, Amerling & Associates, Christiansted, St. Croix, U.S. Virgin Islands, *for Defendant/ Third-Party Plaintiff*

BRITAIN H. BRYANT, ESQ., Bryant, Barnes & Simpson, P.C., Christiansted, St. Croix, U.S. Virgin Islands, *for Third-Party Defendants/Fourth-Party Plaintiffs*

SHARON SCHOENLEBEN, ESQ., 18-2 Estate Enighed, Cruz Bay, St. John, U.S. Virgin Islands, *for Fourth-Party Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

(July 19, 2000)

This matter is before the Court on the motion of Third-Party Plaintiff, Antilles Gas Corporation ("Antilles"), to dismiss the counterclaim of Third-Party Defendants, Lawrence Hodge and Maria Hodge (the "Hodges"). Antilles contends that the Hodges' counterclaim is barred by the applicable statute of limitations. The Court disagrees with Antilles and will therefore deny the Motion to Dismiss.

## I. FACTS AND PROCEDURAL HISTORY

The record shows as follows. On January 28, 1997, a fire erupted in Cruz Bay, St. John in the area of Grumpy's Bar and Oscar's Guesthouse. During the fire, one or more propane gas tanks in the rear of Grumpy's Bar exploded. After one and one-half hours of fighting the blaze, it was extinguished, but not before it destroyed Grumpy's Bar and substantially damaged Oscar's Guesthouse and a convenience store located on the same parcel as Oscar's.

Grumpy's Bar was located on Plot 74-1, Cruz Bay. The Hodges owned Plot 74-1, but at the time of the fire leased the building on that plot to another individual who operated Grumpy's Bar there. Oscar's Guesthouse and the convenience store were located on Plot 74-2, adjacent to Plot 74-1. Plot 74-2 was owned by Oscar James and Doreen James (the "Jameses"). The Jameses also owned Carsals, Inc., (the Jameses and Carsals will collectively be referred to as "Plaintiffs") which operated Oscar's Guesthouse and the convenience store on Plot 74-2.

On March 3, 1998, Plaintiffs sued Antilles. In their complaint, Plaintiffs allege that the propane tank exploded due to Antilles' negligence and that the fire could have been extinguished without damaging their property if the propane tank had not exploded. According to Plaintiffs, Antilles was negligent because it failed to maintain and repair the tank which it owned, failed to properly inspect the tank before filling it to insure that it was safe to use and failed to properly locate the tank on the premises.

In its answer to the complaint, Antilles denied that it was negligent and affirmatively asserted, *inter alia,* that Plaintiffs' damages are due to acts of third parties over which Antilles had no control. Consistent with this defense, on October 20, 1998, Antilles filed a third-party complaint against the Hodges. In its complaint, Antilles alleged that the fire originated in the rear of the Hodges' building and that the damages suffered by Plaintiffs were proximately caused by the Hodges' negligence in failing to properly construct, maintain and secure their building and by allowing their building to encroach on the Jameses' adjacent plot. In its prayer for relief, Antilles demanded judgment against the Hodges "for all sums that may be adjudged against Antilles Gas Corporation in favor of the plaintiffs."[1] The Hodges were personally served with Antilles' third-party complaint on January 12, 1999.

On January 21, 1999, the Hodges moved the Court, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, to require Antilles to provide a more definite statement of its claim. The Court granted the motion, and on March 25, 1999, Antilles filed an Amended Third-Party Complaint. In its amended complaint, Antilles alleged that the Hodges' building had electrical system problems which the Hodges failed to remedy, that the Hodges knew that vagrants frequented the building

---

[1] Antilles' Third-Party Complaint.

nightly but failed to address the problem, that the fire was started by a vagrant and that the building was negligently constructed in that it was attached to the James' building in violation of the Virgin Islands' Building Code. As with its original Third-Party Complaint, Antilles prayed for judgment against the Hodges "for all sums that may be adjudged against Antilles Gas Corporation in favor of the plaintiffs."[2]

On April 12, 1999, the Hodges answered Antilles' Third-Party Complaint and filed a counterclaim against Antilles. In addition, the Hodges filed a Fourth-Party Complaint against Yearwood Enterprises, Inc., doing business as Paradise Gas ("Paradise"). In their answer, the Hodges deny that they were negligent and in support of their counterclaim against Antilles, allege that Antilles supplied the tank and petroleum gas to Grumpy's through Paradise, its agent on St. John. The Hodges claim that Paradise installed and filled the tank on their property and that the tank exploded due to the negligence of Antilles and/or Paradise. The Hodges further claim that their "commercial building located on parcel 74-1 Cruz Bay, St. John was destroyed by [the] fire which occurred on this property ... [and that] the fire in question could have been extinguished without causing extensive damage to [their] building had the gas tank or tanks not exploded...."[3] They assert causes of action against Antilles for negligence, gross negligence, products liability, and strict liability for conducting abnormally dangerous activities. The Hodges are seeking compensatory and punitive damages from Antilles.

## II. DISCUSSION

Antilles has moved the Court to dismiss the Hodges' counterclaim against it on the ground that the claim is barred by the statute of limitations. Antilles contends that the Hodges' counterclaim is subject to a two-year limitation period for damage to real property and that their counterclaim, filed approximately 26 months after the fire, is therefore time-barred. The Hodges respond that they timely filed their claim, which they contend is subject to a six-year statute of limitations for damages to personal property. The Hodges further contend that even if their counterclaim is subject to a two-year statute of limitations, it was

---

[2] Antilles' Amended Third-Party Complaint.

[3] Hodge's Counterclaim against Antilles at paragraphs 6 and 18.

40

timely because the filing date relates back to the date that Antilles filed its Third-Party Complaint, December 15, 1998, which was within two years of the fire. Finally, the Hodges assert that the limitation period was tolled by the discovery rule and that because they did not learn that Antilles supplied the gas tanks to Grumpy's until April 20, 1998, their cause of action against Antilles did not accrue until that time.

## A. The Applicable Statute of Limitations

Before the Court can determine which statute of limitations governs the Hodges' counterclaim against Antilles, it must establish whether they claim damages for injury to real or personal property. In support of its motion, Antilles argues that the counterclaim merely alleges damages to the Hodges' commercial building which Antilles characterizes as real property. The Hodges respond that the building in question was "not constructed in the typical manner."[4] They characterize the commercial structure as a "movable building."[5] In a supporting affidavit, Lawrence Hodge states that the building was constructed on wooden utility poles, and that "the building could readily have been removed from its site and relocated elsewhere by cutting off the utility poles under the main structure and using heavy equipment to move the structure to another site."[6]

Although the Virgin Islands Code does not define "real property," at common law the term includes "the surface of the earth, and things of a permanent nature attached thereto, improvements of a permanent character placed on it, the space above the earth, and minerals, oils and gases found below the surface of the earth." *In Re Tutu Wells Contamination Litigation*, 846 F. Supp. 1243, 1254 (D.V.I. 1993) (quoting 73 C.J.S. Property § 16, at 187-188). In his treatise on real property, Professor Powell remarks: "the Latin Maxim reflecting the rules developed under Roman law strongly influenced this approach: "quicquid plantatur solo, solo credit" meaning "whatever is annexed to the land becomes land." 8 Richard R. Powell, *Powell on Real Property*, P649[1] (1998).[7]

---

[4] Affidavit of Lawrence E. Hodge at paragraph 10.

[5] Hodge's Response to Antilles' Motion to Dismiss at 5.

[6] Hodge Affidavit at paragraph 10.

[7] Anecdotally, Professor Powell includes the following test to distinguish between real property fixtures and personal property:

41

■ To determine whether the commercial structure at issue in this case is real or personal property, the Court must consider three factors: (1) the extent of actual physical annexation to the realty; (2) application or adaptation of the structure to the use or purpose to which the realty is devoted; and (3) intention of the person making annexation to make a permanent accession to the land. *See Daly v. Kier*, 1952 U.S. Dist. LEXIS 1869, 2 V.I. 205, 217 (D.V.I. 1952); *George v. Commercial Credit Corp.*, 440 F.2d 551 (1971); see also *Powell*, *supra* at P652[1]. Applying this three-part test, the Court concludes that the Hodges' structure was part of the realty.

The structure was securely annexed to the land. Although the Hodges characterize the structure as a "movable building,"[8] it was nevertheless securely affixed to the land at the time of the fire. In his affidavit, Lawrence Hodge explained that the structure was affixed to "very large surplus utility poles"[9] and that it was further connected to a cistern and walkway which were affixed to the land. Removing the building would have required cutting these very large poles, as well [*10] as the cistern plumbing and walkway, and using heavy equipment to move it to another location. There is a presumption at common law that a building on land is part of the realty, *see* 35 Am. Jur. 2d Fixtures § 78 (1967), and under ·the· circumstances here, the Court finds that the Hodge's commercial structure was annexed to the property.

Considering the second factor, adaptation, the Court must focus on the "nature of the real estate involved and the degree to which the chattel has been adapted to the use or purpose of the realty to which it becomes attached." *Powell*, *supra* at P652[3]. Here, it is clear that the Hodges were using the land for commercial retail purposes. The structure, which

---

> An excellent candidate for a certain rule is the half-inch formula. Under this formula anything which could be moved more than a half inch by one blow with a hammer weighing not more than five pounds and swung by a man weighing not more than 250 pounds would not be a fixture. Another formula might be the screw-driver-recent-wrench-one-hour rule. Under such a rule anything affixed to the realty would be regarded as a fixture unless one man with a screwdriver and a crescent wrench could loosen it from the floor or wall within one hour.

*Powell*, *supra* at P652[2] (quoting White and Summers, UNIFORM COMMERCIAL CODE § 25.8 at 1056 n.66 (2nd ed. 1980).

[8] Hodge's Response to Antilles' Motion to Dismiss at 5.

[9] Hodge Affidavit at paragraph 10.

housed Grumpy's, and apparently other retail establishments, was reserved exclusively for this purpose. Indeed, the lease between the Hodges and their tenant who operated Grumpy's, restricted use of the structure to "retail sale of food and beverages"[10] and prohibited the tenant from using his space in any manner which would disturb other tenants in the building. Under these circumstances, the Court finds that the Hodges' structure was adapted for use of the realty as retail space.

Finally, and most importantly, the evidence shows that the Hodges intended the structure to be part of the realty. Though not raised by either party, under the lease the Hodges recognized that they had a right to mortgage the leased premises and that the premises were subject to both real property lien statutes and rights of eminent domain. Furthermore, upon termination of the lease, the tenant was required to remove "all equipment, fixtures and other property belonging to him[.]"[11] Inasmuch as a "fixture" is defined as "a chattel attached to the realty which becomes accessory to it and part and parcel of it[,]" *Shank v. Harvey,* 16 V.I. 229, 234, n.6 (Terr. Ct. 1979), it would have been impossible for the Hodges' tenant to claim ownership of a fixture which was attached to personal property. Accordingly, the Hodges must have considered the structure as realty. For all of these reasons, the Court finds that the commercial structure at issue, was real property. *See George,* 440 F.2d at 554.

The statute of limitations governing claims for damage to real property was addressed by the District Court of the Virgin Islands in *In Re Tutu Wells,* 846 F. Supp. at 1254-55. There, the Court rejected the argument raised by the Hodges here, that claims for tortious injury to real property are subject to the six-year statute of limitations provided under title 5, section 31(3) of the Virgin Islands Code. Moreover, the court expressly ruled that claims for tortious injury to real property are subject to the two-year limitation period contained in subsection 31(5)(A). *See In Re Tutu Wells,* 846 F. Supp. at 1255. Thus, inasmuch as the Hodges' counterclaim is clearly limited to tortious damage to their building, which was real property, the tort claims raised in their counterclaim are subject to a two-year statute of limitations. *See id.*

---

[10] Lease, Exhibit "A" to Hodge Affidavit at paragraph 3.(1.).

[11] Lease, Exhibit "A" to Hodge Affidavit at paragraph 2.(7) (emphasis added).

43

## B. Applicability of Statute of Limitations to Counterclaim

Having established that the Hodges' counterclaim is subject to a two-year statute of limitations, the Court must determine whether that statute of limitations bars the Hodges' counterclaim against Antilles. It is undisputed that the Hodges filed their counterclaim more than two years after the fire, and Antilles argues that the counterclaim is therefore time-barred. The Hodges respond that the filing of their counterclaim relates back to the date that Antilles filed its third-party claim and is accordingly not barred. Both parties cite plentiful authority in support of their respective arguments, and the Court's research reveals that there is a split of authority on this issue.

The salient question is whether Antilles, "by instituting [its] action, tolls or even waives the defense of the statute of limitations with regard to a compulsory counterclaim that is asserted after the applicable period has expired. If the statute is deemed tolled, [the Hodges] may interpose [their] counterclaim as long as the claim was timely when [Antilles] brought suit. 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1419, at 151 (2nd ed. 1990). According to *Wright* and *Miller*, "although there is some conflict on the subject, the majority view appears to be that the institution of *plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.*" *Wright and Miller*, § 1419, at 152 (emphasis added). In seeming conflict with *Wright* and *Miller's* comment of what constitutes the majority view, *Moore's Federal Practice* unequivocally observes:

> Counterclaims and cross-claims for affirmative relief are, with some exceptions, subject to the operation of applicable statutes of limitations. If the main action is timely, a claim for recoupment, arising out of the same transaction or occurrence as the main claim and not seeking affirmative relief nor relief different from that sought in the main claim, relates back to the filing of the plaintiff's claim and is not time barred. *Even if compulsory, counterclaims for affirmative relief will be time barred.* However, an amendment to add a compulsory counterclaim arising out of the same transaction alleged in a timely and previously filed answer relates back to the filing of the answer and is not time barred.

3 Wm. Moore et al., *Moore's Federal Practice*, § 14.93 (3d ed. 1999) (emphasis added). The question thus remains: whether a compulsory

44

counterclaim for affirmative relief relates back or is time barred. *Wright* and *Miller* says it relates back, *Moore* says it's time-barred.

Not surprisingly, a survey of cases addressing the issue reveals that jurisdictions are indeed split.[12] According to the court in *Hurst v. U.S. Dep't of Educ.*, 901 F.2d 836, 837 (10th Cir. 1990), "it is fairly well established under [the general principles of federal limitations law] that a counterclaim for affirmative relief ... is subject to the operation of pertinent statutes of limitation." At least one circuit court disagrees. In *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982), the court ruled: "Unlike Rule 15(c) [of the Federal Rules of Civil Procedure], Rule 13(a) contains no mention of relation back. Nonetheless, the better view holds that 'the institution of plaintiff's suit tolls or suspends the running of the statue of limitations governing a compulsory counterclaim."

State courts offer a similar diversity of opinion. In this regard, the Kentucky Supreme Court appropriately found the law "a rather confusing state of conflicting authorities." *Armstrong v. Logsdon*, 469 S.W.2d 342 (Ky. App. 1971). Some courts apply the statute of limitations to counterclaims for affirmative relief but toll the statute for defensive counterclaims for recoupment. *See Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734, 742 (Minn. App. 1985) (ruling that "defensive claims generally relate back, while affirmative claims must satisfy the applicable statute of limitations); *Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15, 16 (ruling that "if a claim would be barred originally by a statute of limitation, it is barred as a counterclaim even if it arises from the same transaction except as it falls within the principles of recoupment."). Some courts blur the distinction between affirmative claims and recoupment claims by tolling the statute of limitation for "affirmative" recoupment claims. *See Allie v. Ionata*, 503 So. 2d 1237 (Fla. 1987); *Romar Development Co. v. Gulf View Management, Corp.*, 644 So. 2d 462, 472-73 (Ala. 1994). Some courts toll the limitations period for compulsory counterclaims, but not permissive counterclaims. See *Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed.Cir. 1985). *See also* 51 Am. Jur. 2d *Limitations of Actions* § 204

---

[12] For a review of cases addressing this issue, *see* W.W. Allen, Annotation, *Claim Barred by Limitation as Subject to Setoff, Counterclaim, Recoupment, Cross Bill, or Cross Claim*, 1 A.L.R.2D 630 (1948) and A.L.R.2D *Later Case Service*, 1-4 A.L.R.2D at 43 (1985).

(1970) (observing that "distinctions are made in some cases between various sorts of counterclaims, setoffs, and pleas in reconvention").

Notwithstanding these varied approaches, most courts that address whether the statute of limitations is tolled for compulsory counterclaims for affirmative relief, generally take one of two views in resolving the issue. Courts that have adopted the view that commencement of the action tolls the statute of limitations with respect to counterclaims for affirmative relief arising from the same transaction, generally base their decisions on equitable policy considerations:

> This approach precludes plaintiff, when the claim and counterclaim are measured by the same period, from delaying the institution of the action until the statute has almost run on defendant's counterclaim so that it would be barred by the time defendant advanced it. Nor is plaintiff apt to be prejudiced by the tolling of the statute, since he presumably has notice at the time he commences his action of any counterclaim arising out of the same transaction as his suit. Moreover, the necessarily close relationship between the timely claim and the untimely counterclaim should insure that the latter is not 'stale' in the sense of evidence and witnesses no longer being available; they should be as accessible for adjudicating the counterclaim as they are for the main claim.

*Wright* and *Miller, supra* at 152-53. *See Armstrong v. Logsdon,* 469 S.W.2d 342, 343 (Ky. 1971) (holding that "simple justice dictates if the plaintiffs are given an opportunity to present a claim for relief based upon a particular automobile collision, the defendant should not be prevented from doing so by a mere technicality.")

In contrast, those courts which have declined to adopt a tolling rule have stressed the importance of strictly applying statutes of limitations. These courts "emphasize statutes of limitations are statutes of repose founded upon a rule of necessity and convenience and the well-being of society. They assume that one having a well-founded claim will not delay enforcing it." *Crivaro v. Rader,* 469 N.E.2d 1184 (Ind. Ct. App. 1984). These courts reason that limitation periods are legislative creations and that courts which apply a tolling rule are engaging in judicial legislation. *See id.* (*citing DiNorscia v. Tibbett,* 50 Del. 118, 124 A.2d 715 (Del. 1956) and *Brown v. Hipshire,* 553 S.W.2d 570 (Tenn. 1977)).

■ Upon reviewing these authorities, the Court finds compelling the approach advocated by *Wright* and *Miller* as the majority view. *See*

46

*Wright* and *Miller, supra* at § 1419 (stating that "the majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim."). *See also* 51 *Am. Jur. 2d* "Limitation of Actions" § 203 (1970) (commenting that the "weight of authority" allows for tolling of limitations period). Where, as in this case, the limitations period expired after the third-party plaintiff filed its claim but before the third-party defendants filed their counterclaim, it makes little sense to time-bar the counterclaim. The issue is the same: whether the negligence of either party or both parties proximately caused the fire to spread. The evidence will thus be closely related, and there is no reason to believe that the evidence will be available for the main claim for the counterclaim. Accordingly, the Court cannot perceive of any prejudice to Antilles by allowing the Hodges to proceed with their counterclaim. Moreover, because there is no statute or Restatement rule to the contrary, the Court must apply the law "as generally understood and applied in the United States." V.I. Code Ann. tit. 1, § 4 (1995). *See also Abdallah v. Callender,* 28 V.I. 416, 428, 1 F.3d 141 (3d Cir. 1993). As stated above, under the majority view, the filing of the plaintiff's suit tolls the limitation period for compulsory counterclaims. *See Wright* and *Miller, supra* at § 1419; 51 *Am. Jur. 2d* "Limitation of Actions" § 203.

## III. CONCLUSION

For the reasons stated above, the Court concludes that Antilles' Motion to Dismiss the Hodges' counterclaim must be denied. Although the counterclaim asserts a cause of action for damage to real property which is governed by a two-year statute of limitation, the limitation period was tolled when Antilles filed its Third-Party Complaint against the Hodges. The Court will thus order the motion denied.